| | |
|---|---|
| 1 | NAVID SOLEYMANI, SBN 219190 |
| | e-mail: soleymani@ymsllp.com |
| 2 | NAVID YADEGAR, SBN 205315 |
| | e-mail: navid@ymsllp.com |
| 3 | YADEGAR, MINOOFAR & SOLEYMANI LLP |
| | 1801 Avenue of the Stars, Suite 1005 |
| 4 | Los Angeles, CA 90067-3206 |
| | Telephone: (310) 499-0140 |
| 5 | Facsimile: (888) 667-9576 |
| 6 | *Attorneys for Anahit Etemadi* |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANAHIT ETEMADI, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR COPYRIGHT INFRINGEMENT** |
| METROPOLITAN FASHION WEEK, LLC, a California limited liability company; EDUARDO KHAWAM, an individual; JULIE DANFORTH, an individual; DOES 1-25, INCLUSIVE, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## INTRODUCTION

1. This action arises out of Defendants' willful acts of copyright infringement.

2. Plaintiff Anahit Etemadi ("Etemadi") created an original artwork and textile design based on her artistic rendition of Marilyn Monroe's image. Etemadi then hand-painted her design on a woman's gown. Etemadi's original artwork and textile design is registered with U.S. Copyright office.

3. Etemadi licensed the design to Metropolitan Fashion Week, LLC ("MFW") so that MFW could exhibit the gown at MFW's fashion shows and in various media platforms to promote its fashion shows. In consideration for this license and as a condition thereof, MFW agreed to accurately credit Etemadi as the creator of the design. MFW exhibited the gown at its fashion shows and in various media platforms, but failed to properly credit Etemadi. In fact, MFW repeatedly exhibited and promoted the gown without proper attribution, even after Etemadi complained to MFW. MFW's conduct constitutes willful copyright infringement. MFW's principal, Eduardo Khawam, has committed vicarious and contributory copyright infringement.

4. In addition, Defendant Julie Danforth has been selling the gown with Etemadi's copyrighted design, without Etemadi's consent.

## PARTIES

5. Etemadi is an individual residing in Los Angeles County.

6. Etemadi is informed and believes, and on that basis alleges, that Defendant Metropolitan Fashion Week, LLC is a limited liability company existing under the laws of the State of California.

7. Etemadi is informed and believes, and on that basis alleges, that Defendant Eduardo Khawam is an individual residing in California. Etemadi is informed and believes, and on that basis alleges that Khawam is the founder, president, producer and director of Metropolitan Fashion Week, LLC.

8. Etemadi is informed and believes, and on that basis alleges, that Defendant Julie Danforth is an individual residing in the State of Washington.

9. Defendants Doe 1 through Doe 25, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Etemadi. When their true names and capacities are ascertained, Etemadi will amend this Complaint by inserting their true names and capacities herein. Etemadi is informed and believes, and thereon alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Etemadi damages as herein alleged were proximately caused by those defendants. Each reference in this Complaint to "Defendant" or "Defendants" refers also to all Defendants sued under fictitious names.

10. Etemadi is informed and believes, and on thereon allege, that at all times herein mentioned each of the Defendants, including all Defendants sued under fictitious names, was the agent, employee, or representative of each of the remaining Defendants, and in doing the things hereinafter alleged, was at times acting within the course and scope of this agency or employment, and at other times, acting in his own individual capacity. In the alternative, each of the individually named Defendants, as alleged herein below, acted in concert and in furtherance of their fraudulent plan and scheme and each actively participated in the wrongful acts alleged herein below.

11. Etemadi is informed and believes, and thereon alleges, that there exists a unity of ownership and interest between Khawam, on the one hand, and Metropolitan Fashion Week, LLC, on the other hand, such that any individuality and separateness between them have ceased, and that each such defendant is the alter ego of the other. Etemadi is further informed and believes, and thereon alleges, that the LLC entity is a mere shell, instrumentality, and conduit through which Khawam carried on his business, and that Khawam exercised complete control and dominance of such business so that any individuality or separateness did not and

does not exist. Etemadi is further informed and believes, and thereon alleges, that adherence to the fiction of the separate existence of the corporate defendant as an entity distinct from the individual defendant would sanction fraud and promote injustice and bad faith.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 1331 and 1338, because the action arises under the Copyright Act, 17 U.S.C. § 501 *et seq.*, and pursuant to the supplemental jurisdiction provisions contained in 28 U.S.C. § 1367.

13. This Court has personal jurisdiction over MFW and Khawam because, Etemadi is informed and believes, that they are citizens and/or residents of California. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because, Etemadi is informed and believes, that MFW and Khawam reside in this district.

14. This Court has personal jurisdiction over Danforth because she has purposefully availed herself of forum benefits; the controversy is related to or arises out of her contacts with the forum; and the assertion of personal jurisdiction would comport with fair play and substantial justice.

## FACTS COMMON TO ALL COUNTS

15. In or about August 2015, MFW representatives asked Etemadi to create an original artwork and textile design that would feature an iconic image of Marilyn Monroe (the "Design") and to paint such Design on a woman's canvas gown. MFW representatives told Etemadi that MFW would license the Design so that the gown would be exhibited by models during MFW's forthcoming fashion shows and in various media platforms to promote MFW and its fashion shows.

16. In consideration for this license and as a condition thereof, MFW promised to accurately credit Etemadi as the creator of the Design whenever the gown would be exhibited to the public, including at MFW's fashion shows and in

3

various media platforms. This consideration was very important to Etemadi, especially because MFW was not offering any financial remuneration to Etemadi. Etemadi hoped and expected that the credit and publicity from the project would further her artistic career. Based on MFW's promises, Etemadi agreed to create the Design and to license it to MFW.

17. MFW gave a white canvas gown to Etemadi, so that Etemadi could hand paint her Design directly on the gown. But, Etemadi was concerned about painting on the specific gown that MFW gave her, in case the Design did not come out as she wanted. So, she purchased the same or similar fabric as the gown, and tailored an identical gown to that which MFW had provided. Etemadi kept MFW's gown as a back-up in case the other gown did not come out as planned.

18. Over the next few weeks, Etemadi spent dozens of hours creating her original Design and then hand-painting the Design on the gown. Etemadi completed the gown in early October 2016. Etemadi registered the Design with the U.S. Copyright Office. The registration number is VA 0001992920.

19. Etemadi delivered the gown to MFW, and its representatives complimented the Design and said that they would feature the gown at their upcoming fashion shows and in media outlets. MFW again promised that it would properly credit Etemadi as the creator of the Design.

20. On or about October 10, 2015, MFW held a fashion show at the Warner Brothers studio in Hollywood. At MFW's direction, Etemadi went back-stage and helped the model put on the gown. The model walked down the red carpet wearing the gown – but to Etemadi's shock and dismay – the announcer publicly announced that the gown was designed by another designer who was present at the fashion show, Defendant Julie Danforth. Etemadi was humiliated that MFW had wrongly given credit for her Design to somebody else.

21. Khawam later appeared to suggest that MFW had made an error, because he invited Etemadi to walk down the runway with the model at the conclusion of the show.

22. The gown was well-received by the show's attendees. Following the show, MFW falsely claimed credit for the Design. On their website, for example, MFW claimed that the that gown was "designed" by Metropolitan Fashion Week and was "painted" by Etemadi. (Exhibit 1.) This statement gave the false impression that MFW had designed the artwork on the gown and Etemadi had merely painted MFW's artwork. Similarly, MFW's monthly newsletter contains a photograph of the gown containing Etemadi's Design with the following caption, in which MFW wrongly took credit for the Design: "One of a kind hand painted & crafted canvas gowns by Metropolitan Fashion Week." (Exhibit 2.) Khawam's Facebook page also contains a photograph of the model wearing the gown at the October 2015 show, with the caption: "Canvas Gown designed by Metropolitan Fashion Week handed painted by artist Anahit Etemadi." (Exhibit 3.)

23. MFW also sought to promote the success of the show in various media outlets. But, contrary to its promises to Etemadi, MFW did not ensure that Etemadi would be credited for her Design. For example, one website, at the domain address www.wantedanddesired.com, featured a description of MFW's fashion show and several pictures of the dresses. The caption under Etemadi's gown stated that it was designed by "Julie Danforth, Rita Mezrahi and Inoe Vargas." (Exhibit 4.) Etemadi was not mentioned, and of course, those other designers had nothing to do with Etemadi's original Design.

24. Another website, at the domain address, http://dressingwildfire.blogspot.com/2015/10/metropolitan-fashion-week.html, posted photographs of several dresses exhibited at the fashion show, including three photographs of the gown containing Etemadi's Design. But, the caption under the photographs identified several designers other than Etemadi. (Exhibit 5.)

25. There were other websites and media outlets that contained depictions of the gown but did not identify Etemadi as the creator of the Design. In fact, following the October 2015 fashion show, Etemadi is unaware of any instance in which MFW properly credited her for the Design, or caused other parties to properly credit her for the Design.

26. On October 15, 2015, Etemadi sent a text message to Khawam, which stated in part: "I am very disappointed since I have not been promoted at all as the designer for my gown; press and authors are posting my gown and naming other artists' name for it." Rather than try to address Anahit's concern, Khawam responded curtly: "you are very ungrateful."

27. On December 23, 2015, Etemadi sent an email message to Khawam, in which she again raised the fact that the post-show publicity had not correctly credited her for the Design. In the email, Etemadi reminded Khawam that she is the registered copyright owner of the Design. Khawam did not respond to the email.

28. On April 23 2016, MFW held a fashion show in Seattle, Washington. MFW had previously told Etemadi that the gown containing her Design would be exhibited at this show.

29. Etemadi made her own travel arrangements so that she could attend. Khawam appeared surprised when he saw that Etemadi had shown up to the event. He apologized for his mistake at the Warner Brothers event (i.e., for identifying somebody else as the designer for the gown). Khawam then took Etemadi back stage to make some minor adjustments to the gown and to help the model wear the gown.

30. Etemadi then watched as the models exhibited the various dresses and gowns. She hoped and expected that, this time, she would receive credit for her hard work and unique design. To her shock and dismay, the announcer announced the gown was designed by Julie Danforth – not Etemadi. And, this time, Khawam

did not even permit Etemadi to walk with the model wearing the gown at the conclusion of the show.

31. Further, MFW distributed a program card to attendees, which stated in part: "Marilyn Monroe Canvas gown by Metropolitan Fashion Week [and] Hand Painted by Anahit Etemadi." (Exhibit 6.) As before, this description was false, misleading, and inconsistent with MFW's agreement to properly credit Etemadi for her Design. The description incorrectly suggested that MFW had designed the artwork and Etemadi had merely painted MFW's artwork on the gown.

32. At the conclusion of the April 2016 show, Etemadi approached Khawam and asked for the return of the gown. Khawam declared that the gown belongs to MFW and instructed security to remove Etemadi from the premises.

33. Following the April 2016 show, Etemadi is informed and believes that Khawam sought to punish and retaliate against her for demanding MFW to return the gown containing her copyrighted Design. In Khawam's social media posts following the April 2016 show, Khawam no longer even identified Etemadi as the person who "painted" the gown. Instead, Khawam relegated Etemadi's identity to her initials: "A.E." More specifically, Khawam's Facebook account contains eleven different photographs of the gown from the April 2016 show, with the following caption: "Canvas Gown designed by Metropolitan Fashion Week and painted by A.E." (Exhibit 7.)

34. On MFW's website and on its Instagram page, MFW included several photographs of the gown from the April 2016 show, with a caption that only includes Etemadi's first name and the initial for her last name: "Canvas Gown designed by Metropolitan Fashion Week @metfashionlab hand painted by Anahit E." (Exhibit 8.)

35. MFW's failure to identify Etemadi as the creator of the Design during its fashion shows and in online media platform violates the terms of the conditional license that Etemadi provided to MFW to use her copyrighted Design.

7

36. Further, Etemadi recently discovered that Danforth has been selling the gown containing her Design, without Etemadi's consent. (*See* Exhibit 9.) Though Danforth apparently removed the gown from her website in response to Etemadi's cease and desist letter, she has not provided an accounting of her sales to Etemadi, so that Etemadi could seek recompense for Danforth's willful copyright infringement.

## COUNT I – FEDERAL COPYRIGHT INFRINGEMENT

37. Etemadi repeats and re-alleges every allegation contained in the preceding paragraphs as though fully set forth herein.

38. Etemadi is the owner of a valid copyright registration issued by the United States Copyright Office for the Design, as alleged herein.

39. Etemadi licensed the Design to MFW so that MFW could exhibit the gown at its fashion shows and in various media platforms.

40. In consideration for this license and as a condition thereof, MFW promised to accurately credit Etemadi as the creator of the Design whenever the gown would be exhibited to the public, including at MFW's fashion shows and in various media platforms.

41. MFW acted outside the scope of this license, and thereby committed copyright infringement, by failing to accurately credit Etemadi as the creator of the Design during its fashion shows and in various media platforms. MFW's copyright infringement has been willful, especially given that MFW continued to act outside the scope of the license after Etemadi complained to MFW about its conduct.

42. Khawam is personally liable for MFW's acts of infringement, because, on information and belief, he personally participated in MFW's unlawful conduct, and because he is vicariously liable for its conduct.

43. Further, Danforth committed copyright infringement by selling the gowns with the Design (and/or displaying them and/or making them available for sale). Danforth's copyright infringement was willful because, among other reasons,

she knew that she had not created the Design – and she knew that Etemadi claimed to be the author of the Design.

44. As a direct and proximate result of its unlawful conduct, Etemadi has suffered, and will continue to suffer, substantial losses including, without limitation, lost profits. Etemadi is entitled to recover its losses, plus all profits Defendants have made as a result of their wrongful conduct, pursuant to 17 U.S.C. § 504(b).

45. As an alternative to actual damages plus Defendants' profits, Etemadi is entitled to the maximum statutory damages, pursuant to 17 U.S .C. § 504(c), in the amount of $150,000 for each infringement by each Defendant, or other such amounts as may be proper pursuant to 17 U.S.C. § 504(c).

46. Etemadi is entitled to her attorneys' fees and costs pursuant to 17 U.S.C. § 505.

47. Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Etemadi great and irreparable injury that cannot fully be compensated or measured in money. Etemadi has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Etemadi is entitled to preliminary and permanent injunctions prohibiting further infringements of Etemadi copyright.

WHEREFORE, Etemadi respectfully prays for Judgment to be entered against Defendants as follows:

1. That the Court enter a judgment against each Defendant that each Defendant has willfully infringed Etemadi's rights in her federally registered copyright referenced herein.

2. That the Court issue temporary, preliminary and permanent injunctive relief against each Defendant, their officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert and/or participation with Defendants, so that all such persons be enjoined and restrained from violating Etemadi's copyright.

3. That the Court enter an order of impoundment pursuant to 17 U.S.C. §§ 503 and 509(a) impounding all infringing copies of Etemadi's copyrighted works.

4. That the Court enter and order requiring each Defendant to provide to Etemadi a full and complete accounting of all profits obtained from their copying, reproduction, distribution, adoption, and/or public display of Etemadi's copyrighted Design, and of any other amounts due and owing to Etemadi as a result of each Defendant's illegal activities.

5. That the Court order each Defendant to pay Etemadi damages and each Defendant's profits pursuant to 17 U.S.C. § 504(b), or, alternatively, enhanced statutory damages pursuant to 17 U.S.C. § 504(c) and 17 U.S.C. § 504(c)(2), for each Defendant's willful infringement of Etemadi' copyrights.

6. That the Court order each Defendant to pay to Etemadi both the costs of this suit and the reasonable attorneys' fees incurred by Etemadi in investigating and prosecuting this action.

7. That the Court award Etemadi prejudgment interest according to law;

8. That the Court grant to Etemadi such other and additional relief as is just and proper.

DATED: February 24, 2017

YADEGAR, MINOOFAR & SOLEYMANI LLP
NAVID SOLEYMANI

_____
Navid Soleymani
Attorneys for Anahit Emetadi